UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELLEN COOK | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:25-cv-01245-X |
| OMNICOM GROUP, INC., et al. | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

SUBMITTED BY:

**ROGGE DUNN**
State Bar No. 06249500
Email: dunn@righttowork.com

**M. COLLIN QUIGLEY**
State Bar No. 24100928
Email: quigley@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF
ELLEN COOK**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ 3

I. Why Defendants' Motion Should Be Denied ........................................... 5

II. Legal Standard .................................................................................... 7

III. Arguments and Authorities ................................................................ 8

    A.    The Complaint Is Not an Improper Group Pleading .................................... 8

    B.    Plaintiff Has Adequately Pleaded That OGI Is Her Employer ................. 10

    C.    Plaintiff's EPA Claims Are Well-Pleaded ..................................................... 14

        1.    Plaintiff alleges sufficient facts of viable male comparators. ...................... 14

        2.    Plaintiff alleges sufficient facts to demonstrate she engaged in protected activity ....................................................................................................... 17

        3.    Plaintiff is able to show a causal link between her protected activity and her termination ............................................................................................. 18

    D.    Plaintiff's Claims Should Not Be Limited to Her Termination ................. 19

    E.    Alternatively, Plaintiff Should be Granted Leave to Amend ..................... 21

IV. Conclusion ....................................................................................... 22

CERTIFICATE OF SERVICE ............................................................... 23

# **TABLE OF AUTHORITIES**

Page(s)

Federal Cases

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 7

*Badii v. Rick's Cabaret Int'l, Inc.*,
   No. 3:12-CV-4541-B, 2013 WL 12124034 (N.D. Tex. June 16, 2013).................... 14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 10

*Brown v. United Parcel Serv., Inc.*,
   406 F. App'x 837 (5th Cir. 2010) ................................................................... 17

*Childers v. Lifestyles Unlimited, Inc.*,
   2023 WL 3961702 (N.D. Tex. June 12, 2023)........................................... 5, 9

*Christiansen v. Omnicom Grp., Inc.*,
   167 F. Supp. 3d 598 (S.D.N.Y. 2016) ............................................................ 12

*Christiansen v. Omnicom Grp., Inc.*,
   852 F.3d 195 (2d Cir. 2017)........................................................................... 12

*Clapper v. Am. Realty Invs., Inc.*,
   2015 WL 3504856 (N.D. Tex. June 3, 2015)................................................... 9

*Crain v. Judson Indep. Sch. Dist.*,
   2018 WL 5315219 (W.D. Tex. Oct. 26, 2018) ................................................ 18

*Gammon v. J.W. Steel & Supply, Inc.*,
   2006 WL 2505631 (S.D. Tex. Aug. 28, 2006) .................................................. 9

*Garcia v. Pro. Cont. Servs., Inc.*,
   938 F.3d 236 (5th Cir. 2019) ......................................................................... 19

*Guillory v. Rainbow Chrysler Dodge Jeep, LLC*,
   158 F. App'x 536 (5th Cir. 2005)................................................................... 14

*Hodgson v. Behrens Drug Co.*,
   475 F.2d 1041 (5th Cir. 1973) ....................................................................... 16

*In re Northstar Offshore Grp., LLC*,
   616 B.R. 695 (Bankr. S.D. Tex. 2020).............................................................. 9

*Lenihan v. Boeing Co.*,
   994 F. Supp. 776 (S.D. Tex. 1998) ................................................................. 17

*Lusk v. Foxmeyer Health Corp.*,
   129 F.3d 773 (5th Cir. 1997) ......................................................................... 11

*McClellon v. Lone Star Gas Co.*,
   66 F.3d 98 (5th Cir. 1995) ............................................................................. 21

*Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*,
   479 F.3d 377 (5th Cir. 2007) ........................................................................... 7

*Pearce v. Wichita Cnty., City of Wichita Falls, Tex., Hosp. Bd.*,
   590 F.2d 128 (5th Cir. 1979) ......................................................................... 16

*Perry v. Pediatric Inpatient Critical Care Servs., P.A.*,
 611 F. Supp. 3d 363 (W.D. Tex. 2020) ................................................................. 14

*Raj v. La. State Univ.*,
 714 F.3d 322 (5th Cir. 2013) ............................................................................... 7

*Ramming v. United States*,
 281 F.3d 158 (5th Cir. 2001) ............................................................................... 7

*Schweitzer v. Advanced Telemarketing Corp.*,
 104 F.3d 761 (5th Cir. 1997) ............................................................................... 10

*Scott v. U.S. Bank Nat'l Ass'n*,
 16 F.4th 1204 (5th Cir. 2021) .............................................................................. 8

*Swierkiewicz v. Sorema N.A.*,
 534 U.S. 506 (2002) ............................................................................................. 7

*Trevino v. Celanese Corp.*,
 701 F.2d 397 (5th Cir.1983) ................................................................................ 10

*Turner v. Baylor Richardson Med. Ctr.*,
 476 F.3d 337 (5th Cir. 2007) .......................................................................... 11, 12

*U.S. ex rel. Tucker v. Christus Health*,
 2012 WL 5351212 (S.D. Tex. Oct. 23, 2012) ...................................................... 9

*United Healthcare Servs., Inc. v. Next Health, LLC*,
 No. 3:17-CV-00243-E-BT, 2021 WL 764035 (N.D. Tex. Feb. 26, 2021).................... 9

*Westlake Corp. v. Chemcorp 1 LLC*,
 2024 WL 3029019 (S.D. Tex. June 17, 2024) ...................................................... 9

*Wilson v. Deutsche Bank Tr. Co.*,
 2019 WL 175078 (N.D. Tex. Jan. 10, 2019)......................................................... 9

TO THE HONORABLE BRANTLEY STARR:

Plaintiff Ellen Cook ("Plaintiff") responds to the Motion to Dismiss (Doc. 9) (the "Motion") Plaintiff's Original Complaint (the "Complaint") filed by Defendants Omnicom Group Inc. ("OGI") and TPN Holdings LLC ("TPN") (together, "Defendants" or "Omnicom"). For the reasons discussed herein, the Motion should be denied. Alternatively, Plaintiff respectfully requests leave to amend to cure any deficiencies.

## I.    Why Defendants' Motion Should Be Denied

Defendants' Motion rests on a series of mischaracterizations of Plaintiff's allegations, applicable legal standards, and Defendants' own corporate structure. None withstand scrutiny. First, Defendants' "group pleading" argument ignores well-established precedent. Courts in this District and across the Fifth Circuit have consistently held that collective allegations are not per se improper and may proceed so long as they provide fair notice. Plaintiff's Complaint does just that. It provides detailed factual allegations, alleges that OGI and TPN operate as a single, integrated enterprise, and sets forth individualized allegations directed at each Defendant. Far from the conclusory pleading in *Childers v. Lifestyles Unlimited, Inc.*, 2023 WL 3961702 (N.D. Tex. June 12, 2023), Plaintiff's Complaint satisfies Rule 8 and gives Defendants clear notice of the claims against them.

Second, Plaintiff adequately pleads that OGI was her "employer" within the meaning of Title VII, the ADEA, and the EPA. The Complaint alleges that OGI exercised substantial control over TPN's operations, strategic direction, and personnel decisions, including those directly affecting Plaintiff, and identifies OGI

executives as the ultimate decisionmakers with respect to her compensation and termination. Those allegations satisfy the Fifth Circuit's single-employer test and establish that OGI and TPN operated as a single, integrated enterprise. OGI's own public representations, including its SEC filings, further confirm that reality.

Third, Plaintiff's Equal Pay Act claims are well-pleaded and supported by specific comparators and allegations of indisputable protected activity. In the Complaint, Plaintiff identifies two male comparators: her predecessor, Michael Sweeney, and another Omnicom agency CEO, Michael Lovegrove, both of whom were paid significantly more than her for substantially equal work. The Complaint further alleges that Plaintiff repeatedly raised her concerns to leadership about being paid less than her male peers, placing Defendants squarely on notice that she was complaining of unlawful discrimination. Her allegations also establish the requisite causal link between her protected activity and her termination.

Finally, Defendants' attempt to narrow Plaintiff's claims to only her termination should be rejected. The Complaint also alleges additional adverse actions beyond her termination, including unequal pay, the denial of the opportunity to be considered and apply for comparable internal roles, and the offer of inferior severance benefits. Each of these additional adverse actions is supported by sufficient factual allegations to state plausible claims for relief under Title VII, the ADEA, and the EPA. In short, Defendants overstate the pleading standard and misread Plaintiff's allegations. Because the Complaint states plausible claims for relief under Rule 8, the Motion should be denied.

## II.    Legal Standard

Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule does not require detailed factual allegations, but "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up). A claim is facially plausible when the pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

At this stage, courts must accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff. *Muhammad v. Dallas Cnty. Cmty. Supervision & Corrs. Dep't.*, 479 F.3d 377, 379 (5th Cir. 2007). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Ramming v. United States*, 281 F.3d 158, 161–62 (5th Cir. 2001).

Equally important, the Supreme Court has squarely held that the *McDonnell Douglas* standard does not govern at the pleading stage. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (explaining that *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement"). A plaintiff need not establish a prima facie case at the pleading stage. *Raj v. La. State Univ.*, 714 F.3d 322, 325 (5th Cir. 2013).

Nor may a court "inappropriately heighten[] the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021), as revised (Nov. 26, 2021).

### III. Arguments and Authorities

As a preliminary matter, Plaintiff voluntarily withdraws the following claims: Fourth Cause of Action (Retaliation under the ADEA) (Compl., ¶¶ 77–82), Seventh Cause of Action (Sex Discrimination under the TCHRA) (*id.*, ¶¶ 93–96), Eighth Cause of Action (Age Discrimination under the TCHRA) (*id.*, ¶¶ 97–100), and Ninth Cause of Action (Retaliation under the TCHRA) (*id.*, ¶¶ 101–105). Plaintiff maintains all remaining claims[1] and respectfully submits that Defendants' Motion should be denied in its entirety with respect to those claims. Alternatively, Plaintiff respectfully requests leave to amend to cure any perceived deficiencies.

### A.    The Complaint Is Not an Improper Group Pleading

Defendants first contend that the Complaint is an impermissible "group pleading" because some allegations refer to OGI and TPN collectively as "Defendants" or "Omnicom." (Defs.' Mot. to Dismiss at 8–10). But Defendants fail to specifically

---

[1] For the avoidance of doubt, Plaintiff maintains her First Cause of Action (Sex Discrimination under Title VII) (Compl., ¶¶ 61–66), Second Cause of Action (Retaliation under Title VII) (*id.*, ¶¶ 67–71), Third Cause of Action (Age Discrimination under the ADEA) (*id.*, ¶¶ 72–76), Fifth Cause of Action (Sex Discrimination under the EPA) (*id.*, ¶¶ 83–87), and Sixth Cause of Action (Retaliation under the EPA) (*id.*, ¶¶ 88–92).

identify a single allegation that supposedly deprives them of fair notice or an opportunity to defend themselves. (*See id.*).

Courts across the Fifth Circuit have rejected the argument that collective allegations are per se improper. *See, e.g., Gammon v. J.W. Steel & Supply, Inc.*, 2006 WL 2505631, at *1 (S.D. Tex. Aug. 28, 2006) (Rosenthal, J.) ("There is no prohibition against group pleading."); *U.S. ex rel. Tucker v. Christus Health*, 2012 WL 5351212, at *4 (S.D. Tex. Oct. 23, 2012) (Atlas, N.) (allegations that defendants are interrelated and acted together do not alone warrant dismissal); *Clapper v. Am. Realty Invs., Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (explaining that, except where a statute requires otherwise, plaintiffs may allege that multiple defendants committed the same act); *Wilson v. Deutsche Bank Tr. Co.*, 2019 WL 175078, at *7 (N.D. Tex. Jan. 10, 2019) (Fitzwater, J.) (rejecting any "per se rule" against attributing conduct to a group of defendants); *In re Northstar Offshore Grp., LLC*, 616 B.R. 695, 723 (Bankr. S.D. Tex. 2020) (Isgur, M.) (accepting group pleading under Rule 8); *United Healthcare Servs., Inc. v. Next Health, LLC*, No. 3:17-CV-00243-E-BT, 2021 WL 764035, at *6 (N.D. Tex. Feb. 26, 2021) (Brown, A.) (complaint not defective where it alleged multiple defendants committed the same act); *Westlake Corp. v. Chemcorp 1 LLC*, 2024 WL 3029019, at *1 (S.D. Tex. June 17, 2024) (Rosenthal, L.) (plaintiff "need not allege separate wrongdoings for each defendant").

Defendants' reliance on *Childers*, 2023 WL 3961702 is misplaced. There, this Court dismissed the plaintiff's complaint because it lumped three distinct defendants together under one label, "Lifestyles," and, beyond naming them at the outset, failed

to allege a single individualized fact against any of them. *Id.* at *4. The complaint also contained scant factual detail, relying largely on conclusory assertions, and never alleged that the three defendants were part of a single, integrated enterprise. *See generally* Pl.'s Am. Compl., *Childers*, No. 3:22-cv-02615-X (N.D. Tex. Nov. 28, 2022), ECF No. 5. By contrast, Plaintiff's Complaint here provides detailed factual allegations (Compl., ¶¶ 12–59), expressly alleges that OGI and TPN operate as a single, integrated enterprise (*id.*, ¶ 7), and contains multiple individualized allegations directed at each Defendant. (*See, e.g., id.*, ¶¶ 1, 6–7, 14, 16, 49).

Accordingly, Plaintiff's Complaint is far from an "impermissible group pleading." It fully complies with Rule 8 and "gives [Defendants] fair notice of what [Plaintiff's] claim[s are] and the grounds upon which [they] rest[]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## B.    Plaintiff Has Adequately Pleaded That OGI Is Her Employer

Defendants next argue that Plaintiff's claims against OGI must fail because she (i) "fails to plead that OGI is an employer" under the applicable statutes, and (ii) has not plausibly alleged that OGI "jointly employed" her with TPN. (Defs.' Mot. to Dismiss at 10–11). Initially, Plaintiff does not proceed under a "joint employer" theory with respect to her claims against OGI; she relies solely on a "single employer" theory.

The Fifth Circuit has long recognized that, "[i]n civil rights actions, 'superficially distinct entities may be exposed to liability upon a finding they represent a single, integrated enterprise: a single employer.'" *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997) (citing *Trevino v. Celanese*

*Corp.*, 701 F.2d 397, 404 (5th Cir.1983)). Courts consider the following four factors to determine whether a parent corporation (like OGI) and subsidiary (like TPN) constitute a single employer: (1) interrelation of operations, (2) centralized control of labor or employment decisions, (3) common management, and (4) common ownership or financial control. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The "centralized control" factor is the most important and has been distilled down to one inquiry: "What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 344 (5th Cir. 2007).

Here, Plaintiff alleges that OGI "exercised substantial control over [TPN's] operations, strategic direction, and personnel decisions, including those directly affecting Plaintiff, such that the two entities functioned as a single, integrated enterprise." (Compl., ¶7). She further alleges that she reported her pay disparity to Michael Larson, CEO of Diversified Agency Services ("DAS"), a division of OGI,[2] and that Larson, acting on behalf of OGI,[3] awarded her unvested RSUs under Omnicom's Employee Stock Purchase Plan and promised to revisit her compensation, but failed to follow through. (*Id.*, ¶¶24–27). These allegations demonstrate that OGI, not TPN,

---

[2] *See, e.g.,* Omnicom Grp., *The DAS Group of Companies Launches One Hundred* (Oct. 6, 2014), https://www.omnicomgroup.com/newsroom/the-das-group-of-companies-launches-one-hundred/ [https://perma.cc/Q52K-ZQTD] ("The DAS Group of Companies, a division of Omnicom Group Inc….").

[3] On his LinkedIn page, Larson identifies his employer at the time as "Omnicom Group." Michael Larson, *Profile Page*, LinkedIn, https://www.linkedin.com/in/michael-larson-b703492/ [https://perma.cc/Z2UM-JMC3].

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT – Page 11

"made the final decisions regarding employment matters relat[ing] to [Plaintiff]," satisfying the Fifth Circuit's single employer test.[4] *See Turner*, 476 F.3d at 344; *see also Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 609 (S.D.N.Y. 2016) (finding allegations sufficient to support single-employer liability against OGI where plaintiff alleged that OGI exercised extensive control over its subsidiary's operations and personnel decisions, controlled plaintiff's benefits, and promulgated the subsidiary's employment policies), *aff'd in part, rev'd in part on other grounds*, 852 F.3d 195 (2d Cir. 2017).

OGI's own representations corroborate this reality. Its website describes itself as an "inter-connected global network of leading marketing communications companies,[5] which is just another way of saying "single, integrated enterprise." Its SEC filings repeatedly refer to "Omnicom Group Inc. and its subsidiaries" collectively as "Omnicom," "the Company," "we," "our," and "us."[6] Its 2024 Form 10-K goes further, confirming that, although its networks and agencies operate under different

---

[4] Although not currently pleaded in Plaintiff's Complaint, there are several additional facts that further support the fact that OGI made the final decisions regarding employment matters relating to Plaintiff. For instance, in her role as CEO of TPN, Plaintiff reported to Jacquelyn Baker, CEO of Omnicom Commerce Group (a DAS subdivision), who in turn reported to Larson. Additionally, Baker, along with Derric Ciccone, Omnicom Commerce Group's Global CFO, ultimately informed Plaintiff of her termination.

[5] Omnicom Grp., *About* (last visited Aug. 23, 2025), https://www.omnicomgroup.com/about/ [https://perma.cc/HG5E-CKWK] (emphasis added).

[6] *See, e.g.,* Omnicom Grp., *Annual Report on Form 10-K for the Year Ended December 31, 2024*, at 1 (SEC filed Feb. 5, 2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000029989/fd3bc333-bd31-4d39-b85c-778ca98a4614.pdf [https://perma.cc/7VVP-2WNX] (emphasis added).

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT – Page 12

names, it "structures its services and allocates resources around client needs" and requires its agencies to collaborate through a client-matrix organization and internally developed technology platforms, allowing them to "cut across [its] internal organizational structures to execute [its] clients' marketing requirements in a consistent and comprehensive manner."[7] And most recently, OGI eliminated individual agency email domains and transitioned all nearly 75,000 employees to a unified "@omc.com" domain.[8]

Defendants' suggestion that OGI nevertheless does not meet the definition of "employer" under the applicable statutes because it allegedly "has no employees" is wrong as a matter of law.[9] (Defs.' Mot. to Dismiss, at 11 n.12). Under the single-employer doctrine, an entity need not independently meet statutory numerosity if, as

---

[7] Omnicom Grp., *Annual Report on Form 10-K for the Year Ended December 31, 2024*, at 1–2 (SEC filed Feb. 5, 2025), https://d18rn0p25nwr6d.cloudfront.net/CIK-0000029989/fd3bc333-bd31-4d39-b85c-778ca98a4614.pdf [https://perma.cc/7VVP-2WNX].

[8] *Exclusive: Omnicom to Ditch Individual Agency Email Domains*, ADWEEK (May 30, 2023), https://www.adweek.com/agencies/exclusive-omnicom-to-ditch-individual-agency-email-domains/ [https://perma.cc/G8JL-944N] (explaining that, due to its focus on "bringing together the unique strengths of [its] agency brands with the streamlined support of shared operations to create a more nimble organization," OGI was "simplifying [its] IT approach by uniting [its] organization under a single, unified email address").

[9] It also directly contradicts OGI's website, which indicates that it employs many more employees than "none." *See, e.g.*, Omnicom Grp., *Omnicom Group – Global Communications Solutions and Talent* (last visited Aug. 23, 2025), https://www.omnicomgroup.com/ [https://perma.cc/F246-HR8K] ("We are committed to developing our employees"); Omnicom Grp., *Talent* (last visited Aug. 11, 2025), https://www.omnicomgroup.com/culture/talent/ [https://perma.cc/7KYD-N829] ("LinkedIn Learning creates exciting opportunities for Omnicom employees"; "Omnicom has always strived to be a great place for people to work")

here, it functions as part of an integrated enterprise whose combined employees exceed the threshold. *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, 611 F. Supp. 3d 363, 376 (W.D. Tex. 2020), *aff'd sub nom. Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918 (5th Cir. 2021); *see also Guillory v. Rainbow Chrysler Dodge Jeep, LLC*, 158 F. App'x 536 (5th Cir. 2005) (applying single employer test to determine whether to aggregate one entity's employee with employees of another for purposes of Title VII); *Badii v. Rick's Cabaret Int'l, Inc.*, No. 3:12-CV-4541-B, 2013 WL 12124034, at *6 (N.D. Tex. June 16, 2013) ("[T]he [single employer] test has been utilized to aggregate the number of employees of multiple entities for the determination of whether an employer meets the statutory definition under Title VII."). Importantly, Defendants concede "that TPN is an 'employer' as defined by the applicable statutes," and, therefore, meets the statutory numerosity thresholds. (Defs.' Mot. to Dismiss, at 11). Accordingly, OGI, together with TPN, also satisfies the statutory definition of "employer." *See Perry*, 611 F. Supp. 3d at 376.

For each of these reasons, Plaintiff has adequately pleaded that OGI was her employer. The Court should, therefore, deny Defendants' request to dismiss Plaintiff's claims as to OGI.

## C.    Plaintiff's EPA Claims Are Well-Pleaded

1.    <u>Plaintiff alleges sufficient facts of viable male comparators.</u>

Defendants argue that Plaintiff's EPA discrimination claim fails because "she fails to allege sufficient facts that a 'similarly situated' male comparator received higher compensation for 'substantially equal' work." (Defs.' Mot. to Dismiss, at 14).

Plaintiff, however, identifies not one, but <u>two</u> male comparators, both of whom received higher compensation than she did for substantially equal work: (1) "her male predecessor, Michael Sweeney" (Compl., ¶ 18); and (2) "Michael Lovegrove, CEO of…TracyLocke," another OGI agency. (*Id.*, ¶ 20).

With respect to Sweeney, Defendants argue that Sweeney is not a proper comparator because he supposedly never held the "same job" as Plaintiff. (*See* Defs.' Mot. to Dismiss, at 16). That is demonstrably false. Throughout the Complaint, Plaintiff repeatedly alleges that Sweeney was her "predecessor." (*See* Compl., ¶¶ 15 ("her male predecessor, Mike Sweeney"), 18 ("her male predecessor, Mr. Sweeney"), 39 ("Mr. Sweeney, Plaintiff's predecessor"). In other words, immediately prior to becoming CEO of Integer (as a whole), Sweeney was CEO of Integer (again, as a whole). (*Id.*, ¶¶ 14–15, 18, 39).

Plaintiff never alleges that Sweeney was the "CEO for Integer Denver," as Defendants mistakenly suggest. (Defs.' Mot. to Dismiss, at 16). Defendants' confusion stems from Plaintiff's allegation that, "[f]rom 2017 through 2020, under Mr. Sweeney's leadership, Integer Denver revenue declined by 36.6%, and network-wide revenue fell by 19.9%." (*See id.*, ¶ 47). But "Mr. Sweeney's leadership" refers to his role as CEO of Integer as a whole, not as "CEO for Integer Denver"—a nonexistent position. (*Id.*, ¶¶ 15, 18, 39). As CEO of Integer, Sweeney's position "required equal skill, effort, and responsibility" and involved "substantially similar" job duties and responsibilities as Plaintiff's position as CEO of Integer. (*Id.*, ¶ 22–23). The fact that Sweeney and Plaintiff held the role at different times is immaterial; the Equal Pay

Act expressly covers jobs held "in immediate succession" as well as concurrently. *Pearce v. Wichita Cnty., City of Wichita Falls, Tex., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041, 1049 (5th Cir. 1973). Yet while holding the identical position, Defendants paid Plaintiff approximately 44% less in total compensation than it had paid Sweeney when he held the position. (*Id.*, ¶¶ 18–19).

As for Lovegrove, Defendants argue that he is not a viable comparator because Plaintiff alleges that Lovegrove was the "CEO of a different company." (Defs.' Mot. to Dismiss, at 17). But that is not what Plaintiff alleges. Instead, Plaintiff alleges that Lovegrove was the CEO of another Omnicom "agency," operating under the same umbrella and as part of the same single, integrated enterprise. (*See* Compl., ¶¶ 20–21). She further alleges that "[t]heir job duties and responsibilities were substantially similar," and that their "role[s] required equal skill, effort, and responsibility, and [were] performed under comparable working conditions." (*Id.*, ¶¶21–22). Like with Sweeney, however, Lovegrove was "paid approximately $75,000 more a year in base salary than Plaintiff" and received "superior bonus and equity compensation, including restricted stock units." (*See id.*, ¶¶ 20, 22).

Accordingly, Plaintiff's has pleaded sufficient facts to show that both Sweeney and Lovegrove are similarly situated male comparators who received higher compensation for substantially equal work. Thus, either comparator independently

supports a viable EPA discrimination claim.[10] The Court should, therefore, deny Defendants' request to dismiss Plaintiff's EPA discrimination claim.

2.   <u>Plaintiff alleges sufficient facts to demonstrate she engaged in protected activity.</u>

Defendants argue that Plaintiff's EPA retaliation claim fails because her complaints were merely requests for a raise, not protected activity. (Defs.' Mot. to Dismiss, at 18–19). That argument misstates both the law and Plaintiff's allegations. The Fifth Circuit has made clear that an employee need not invoke "magic words," such as "discrimination" or "illegal," for her complaints to constitute protected activity. *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam). The question is simply whether the employee conveyed a "reasonable belief that unlawful discrimination [was] at issue." *Id.*

Plaintiff did exactly that. In June 2023, she told Larson in person that "her compensation was significantly below that of her male peers, and that this disparity was emblematic of broader gender-based inequities at Omnicom." (Compl., ¶ 25). She reinforced that message in follow-up emails, expressly identifying herself "as a female leader" and stressing the importance of equitable compensation. (*Id.*, ¶ 27–28). Those statements squarely placed Defendants on notice that Plaintiff believed she was

---

[10] Under the EPA, a "plaintiff need not prove that she was paid less than every comparable male employee." *Lenihan v. Boeing Co.*, 994 F. Supp. 776, 799 (S.D. Tex. 1998) (citation omitted). A plaintiff need only "show that there is discrimination in pay with respect to one employee of the opposite sex." *Id.* Thus, even if the Court finds Plaintiff's allegations insufficient to show that Lovegrove is viable comparator, the Court should still deny Plaintiff's Motion because, as discussed above, she has alleged sufficient facts to show that Sweeney—her predecessor—is a viable comparator.

being subjected to sex-based discrimination. Defendants' reliance on *Crain v. Judson Indep. Sch. Dist.*, 2018 WL 5315219 (W.D. Tex. Oct. 26, 2018) only underscores the sufficiency of Plaintiff's allegations. In *Crain*, the plaintiff merely complained that he "believed [he was] paid less than others who have less experience than [him]," without any reference to sex or gender. *Id.*, at *16. By contrast, Plaintiff specifically tied her pay disparity to her gender, making clear she believed unlawful discrimination was at issue. (Compl., ¶¶ 25–28, 68, 78, 89, 102).

As such, Plaintiff has sufficiently alleged that she engaged in protected activity. The Court should, therefore, deny Defendants' request to dismiss Plaintiff's EPA retaliation claim.

3. <u>Plaintiff is able to show a causal link between her protected activity and her termination.</u>

Defendants next contend that Plaintiff's EPA retaliation claim fails because Plaintiff cannot show a causal link between her protected activity and her termination of employment.[11] (Defs.' Mot. to Dismiss, at 20–21). In doing so, Defendants assume that Plaintiff's email to Larson on August 3, 2023, was the last and final time she ever complained about her sex-based pay disparity. (*Id.*) In addition to her in-person meeting with Larson in mid-June (Compl., ¶¶ 24–25), her email to Larson on June 22, 2023 (*id.*, ¶ 26), and her email to Larson on August 3, 2023 (*id.*, ¶ 28), however, Plaintiff continued to raise her concerns to Larson verbally

---

[11] With respect to her EPA retaliation claim, Plaintiff relies solely on the adverse employment action of her termination of employment.

on several occasions between September and December 2023, and she also reported her concerns to Cara Milligan, Omnicom Commerce Group's General Counsel, between late January and early February 2024.

Because Plaintiff continued to complain about her pay disparity through late January and early February 2024 and she was informed of her termination approximately two months to two-and-a-half months later, Plaintiff is able to show a causal link between such protected activity and her termination of employment. *See Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (holding that a two-and-one-half-month period is sufficient to show a causal connection). Plaintiff, therefore, respectfully requests leave to amend her Complaint to add allegations of these continued complaints.

### D.    Plaintiff's Claims Should Not Be Limited to Her Termination

Finally, Defendants ask the Court to dismiss all of Plaintiff's claims to the extent based on any adverse action other than her termination of employment. (Defs.' Mot. to Dismiss, at 21–23). The Court should deny Defendants' request. As a preliminary matter, and as discussed above, *supra* Section III.C, Plaintiff has stated a plausible claim of sex-based discrimination under the EPA in connection with the pay disparity between her, Sweeney, and Lovegrove. For the same reasons, Plaintiff has also stated a plausible claim of sex-based discrimination under Title VII in connection with the same such pay disparities.

In addition to her termination of employment and pay disparity, Plaintiff also bases her Title VII discrimination claim on two additional adverse employment

actions: (1) the denial of an opportunity to be considered and apply for comparable internal roles; and (2) the offer of an inferior severance package as compared to similarly situated males. (Compl., ¶¶ 62–64). With respect to the denial of an opportunity to be considered and apply for comparable internal roles, Plaintiff alleges that, instead of being terminated like Plaintiff, "Lovegrove was reassigned to a new role titled Chief Experience Officer." (*Id.*, ¶ 35). Plaintiff, however, was never considered for or allowed to apply for this role, despite her being promoted to CEO at the same time as Lovegrove and having "significantly more experience and success than [Lovegrove]." (*Id.*, ¶¶ 35–36). With respect to Omnicom's offer of an inferior severance package as compared to similarly situated males, Plaintiff alleges that "Omnicom offered [her] only six months of severance and a brief two-month transition period," whereas her male predecessor, Sweeney, "[w]as given a new role, a new title, and continued compensation and benefits when he stepped down as CEO."[12] (*Id.*, ¶ 38). Plaintiff has, therefore, alleged sufficient facts to state plausible claims for relief under Title VII based on, not only her termination of employment and pay disparity, but the denial of an opportunity to be considered for and apply for comparable internal roles and the offer of an inferior severance package.

    As it relates to her age discrimination claim under the ADEA, in addition to her termination of employment, Plaintiff also bases this claim on the denial of an

---

[12] Similarly, Sweeney's predecessor, Jeremy Pagden, was also allowed to transition to a new role following his tenure as CEO of Integer.  And, in that role, Pagden received an annual base salary of approximately $50,000, as well as employment benefits and potentially also bonuses and/or RSUs..

opportunity for Plaintiff to be considered and apply for comparable internal roles. (*Id.*, ¶ 73). In support of this claim, Plaintiff alleges that, instead of terminating Lovegrove, a younger male, Omnicom "reassigned [him] to a new role titled Chief Experience Officer," without considering her or allowing her to apply for the role. (*Id.*, ¶¶ 35, 37). Plaintiff further alleges that "[t]he Chief Experience Officer role centers on experience strategy and design, a domain in which Plaintiff had significantly more experience and success than Lovegrove," and that the "job responsibilities assigned to [Lovegrove] in this new role mirrored those that Plaintiff had performed as CEO [of TPN]," yet Omnicom gave the role to Lovegrove over her. (*Id.*, ¶¶ 36–37). Thus, in addition to her termination of employment, Plaintiff has also alleged sufficient facts to state a plausible claim for age discrimination under the ADEA based on the denial of an opportunity to be considered and apply for comparable internal roles.

For each of these reasons, the Court should deny Defendants' request to dismiss all of Plaintiff's claims to the extent based on any other adverse employment action other than her termination of employment.

### E.    Alternatively, Plaintiff Should be Granted Leave to Amend

In the event the Court determines that deficiencies exist in Plaintiff's Complaint, Plaintiff respectfully requests leave to amend to cure any such deficiencies. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995) ("[T]he appropriate remedy when granting a motion based on nonconforming or

deficient pleadings is to grant the complainant time within which to amend the complaint.").

## IV.    Conclusion

For all the reasons set forth above, Plaintiff's Complaint easily satisfies the pleading requirements of Rule 8 and states plausible claims for relief under Title VII, the ADEA, and the EPA. Accordingly, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety. In the alternative, should the Court find any deficiencies, Plaintiff requests leave to amend to cure such deficiencies.

Respectfully submitted,

_____

**ROGGE DUNN**
State Bar No. 06249500
Email: dunn@righttowork.com

**M. COLLIN QUIGLEY**
State Bar No. 24100928
Email: quigley@roggedunngroup.com

**ROGGE DUNN GROUP, PC**
500 N. Akard Street
Suite 1900
Dallas, Texas 75201
Telephone: (214) 888-5000
Facsimile: (214) 220-3833

**ATTORNEYS FOR PLAINTIFF
ELLEN COOK**

## <u>CERTIFICATE OF SERVICE</u>

I certify that today, August 25, 2025, this document was served on all parties and counsel of record using the Court's ECF system.

_____

**ROGGE DUNN**
**M. COLLIN QUIGLEY**

R:/9/0912/001 - Omnicom/Pleadings/Drafts/Cook-Omnicom – RESP to Defendants' MTD.docx